MISSOURI, K. & T. RY. CO. vs WILHOIT.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 341).

1.    *Practice—Assignment of Error—When Not Considered* .

In a motion for a new trial no complaint was made as to the instruc-

tions given by the court on its own motion. *Held;* Under the ruling of the Appellate Court no consideration can be given to assignments of error predicated upon such instructions.

2. *Same—Specifications of Error—Sufficiency.*

Specifications of error that the court erred in refusing to instruct the jury as requested by the defendant, to which action of the court the defendant excepted; that the court erred in the several instructions given to the jury at the request of the plaintiff to which the defendant excepted; will not be considered by the Appellate Court because too general.

3. *Master and Servant—Fellow Servants.*

The general rule is that those entering into the service of a common master become thereby engaged in a common service, and are fellow servants, but the master owes to the servant certain duties such as providing a reasonably safe place to work, reasonably safe tools, appliances and machinery and he must exercise proper diligence in the employment of reasonable and competent men to perform their respective duties. If the master be neglectful in any of these matters he is liable. And if he employ another in the performance of these obligations for him, he is liable for the neglect of that other.

4. *Assumption of Risk—Evidence.*

It is not error for the court to refuse to admit evidence tending to prove that the plaintiff knew the condition of the track where the accident occurred, where the defendant had not pleaded such knowledge on the part of the plaintiff.

LAWRENCE J., dissenting.

Appeal from the United States Court for the Northern District of the Indian Territory; before Justice Joseph A. Gill, February 17, 1904.

Action by John Wilhoit against the Missouri, Kansas & Texas Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

On September 9, 1903, plaintiff (appellee) filed his complaint, and alleged that on February 2, 1903, he was in

the employ of the defendant as a section hand; that he and other section hands were at work on defendant's track under a section foreman named Cook; that in going to and from work the defendant furnished a hand car; that in furnishing said hand car it became and was the duty of the defendant to furnish a hand car that was safe for use on its tracks; that this plaintiff was not skilled in machinery, and was not aware of the condition of said hand car; that, in fact, the said hand car was very badly worn and the rims of the wheels were not sufficient to hold it on the track, and the axles and boxes of said hand car were so badly worn that said hand car was liable at any time to jump the track; that one of the wheels of said car was out of line in such a way as to have a tendency to climb the rail and throw the car off the track; that the condition of said hand car was known to the defendant before the injuries to plaintiff occurred; and its defects could have been discovered by defendant in time to avoid the accident to plaintiff, had defendant properly inspected its condition; that on said February 2, 1903, while the plaintiff and other section hands were bringing in said car, and while plaintiff, in the exercise of due care, was pumping said car, "said car, as a result of its defective condition as aforesaid, caused by defendant's negligence in furnishing the same in said condition and failing to inspect and to repair the same, jumped the track just north of a bridge, about one and one-half miles south of Big Cabin, I. T."; that as a result plaintiff was thrown over said bridge and very badly injured; that said injuries consisted of wounds and bruises and a broken arm, and, as a further result, plaintiff suffered great pain, lost blood, and was totally incapacitated by reason of suffering and said wounds from doing any work of any kind for six weeks; that the broken bone in the arm has never healed, and plaintiff is advised it never will; that plaintiff has lost the use of his left arm, and has suffered continuously ever since the accident; that

plaintiff was an able-bodied man, earning $32.50 per month and his house rent before his accident; that he is now unable to do manual labor by reason of his injuries; "that the proximate cause of all his said injuries to this plaintiff was neglect of the defendant, in that it did not furnish a hand car suitable and safe for the purpose, and did not inspect it so as to ascertain its condition;" that he has been damaged in the sum of $10,000, for which he asks judgment. On October 7, 1903, defendant filed its answer, and denies each and every material allegation in plaintiff's complaint, and, "further answering, defendant states that even if the plaintiff was injured at the time and place and in the manner alleged in said complaint, but all of which is denied by this plaintiff, that such injuries were not caused by any negligence on the part of this defendant, or any of its agents, servants, or employes, but was due solely to negligence on the part of the plaintiff;" and asks judgment for its costs. On February 16, 1904, the case was tried before a jury, who on February 17, 1904, returned the following verdict: "We, the jury, find the issues in favor of the plaintiff, and we assess his damages at $7,000.00. J. H. Rood, Foreman." On same day defendant filed its motion for new trial, which was overruled by the court, to which defendant excepted, and judgment was rendered on the verdict, and defendant appealed to this court.

*Clifford L. Jackson,* for appellant.

*W. H. Kornegay,* for appellee.

TOWNSEND, J. (after stating the facts). The appellant (defendant below) has filed 11 specifications of error, which its counsel discusses under three subheads.

Under the first subhead he discusses the specifications of error numbered 2, 3, 4, 6, 7, 8, 9, and 10. After stating

the age of plaintiff, and that he had worked upon the same section for 17 months, that the hand car in question had been in use for 14 or 15 months by this particular gang and on this particular section, and that no accident had occurred to any one using the car, and that the car had never been derailed prior to this accident, counsel say the court should have instructed the jury as requested by him, as follows: "Even though the jury believe that the accident in question in this case was occasioned by the defective condition of the hand car, and that such defect was known to exist by the railway company, and that it was negligent in providing the same for the use of the section crew in question, yet, if the plaintiff knew, or by the exercise of ordinary care and prudence could have discovered or known, of the defective condition of the hand car, he will be held to have assumed the risk of using such defective hand car, and cannot recover in this case. The jury is instructed that if you find from the evidence in this case that the hand car in question had been used upon the section of the railway where the accident occurred some time previous to the accident in question, and that the plaintiff, Wilhoit, was frequently engaged in riding upon, assisting in operating, and otherwise using said hand car, and had an opportunity, with the use of ordinary care on the part of the plaintiff, to have discovered the condition of the hand car, that even though you may find that the railway company was negligent in failing to provide a proper hand car for its employes, that the plaintiff will be held to have assumed all risk of using said hand car, and cannot recover in this case. The jury is instructed in this case that if' you find from the evidence that the hand car in question was used by the section crew on the section of the railway company where the accident in question occurred for some months prior to the time of the accident, and said hand car did not during that time jump the track, and during said time no other accident happened

to said hand car, there can be no negligence attributed to the defendant in this case because of the condition of said hand car"—all of which requests were refused, and erroneously instructed the jury as follows: "It is claimed by defendant in this case that plaintiff in remaining in its employ and riding on the hand car after knowledge of its defective condition was guilty of negligence which contributed to his injury. The burden of proving this is on the defendant. It may establish this either by the evidence it introduces, or by plaintiff's evidence. Plaintiff claims that he was unskilled in machinery, and did not know what the nature of the defects were. You are instructed that it was not the duty of plaintiff to inspect the car or look for defects therein, that plaintiff had a right to rest on the assumption that the hand car in question was free from defects discoverable by proper inspection, and that it had been properly inspected by a competent inspector. Neither was the plaintiff called upon to pass judgment on the railroad's methods of business, or to conclude as to their adequacy. He had a right to assume that the defendant had used reasonable care to furnish a safe hand car, and to deal with the hand car relying on the fact that it was safe." Counsel contends that the true rule as to the assumption of risk is laid down in the case of St. Louis Cordage Co. vs Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551, and the same, being a decision of the Circuit Court of Appeals for the Eighth Circuit, is binding upon this court.

Under the second subhead appellant insists the trial court erred in instructing the jury that it was the duty of the railway company to establish by a preponderance of evidence the contributory negligence of the appellee, which is specification of error No. 5. Counsel for appellee contends that for the reason that appellant in his motion for new trial in the court below failed to state the grounds for a new trial separately,

and in separate paragraphs (see Hughes Bros. Mfg. Co. vs Reagan [I. T.] 69 S. W. 940), so that "each error complained of should be stated as a separate ground, and they should be stated so specifically as to direct the attention of the court and opposing counsel to the precise errors complained of, a mere statement of the ground without further specifications will therefore be insufficient," and that in consequence the first, second, third, and fifth grounds of the motion for new trial were not well taken as being too general. It will be observed that nowhere in the motion for a new trial is there any complaint made of the action of the court in giving any of the instructions that it gave of its own motion. However, the fifth and sixth assignments of error in this court are predicated upon the giving in charge by the court of its own motion of an instruction on the subject of the burden of establishing contributory negligence. It does not seem that under the rulings this could now be considered by this court.

The second, third, and fourth specifications of error, under the same rule, could not be urged in this court, as they are based on the fifth assignment in the motion for new trial, as follows: "That the court erred in refusing to instruct the jury as requested by the defendant, and to which action of the court below the defendant duly excepted." And under the same proposition specifications 7, 8, 9, and 10 should not be considered, as the specification below was a general one, as follows: "That the court erred in the several instructions given to the jury at the request of the plaintiff, to which action of the court the defendant duly excepted." If this decision in Hughes Bros. vs Reagan, decided by Judge Clayton, is correct, and is to be followed, it only leaves to be considered the first specification of error, which is based upon the fourth ground of motion for new trial, and is as follows: "That the court erred in refusing to instruct the jury to return a verdict

for the defendant"—together with the eleventh specification of error, which is based on the action of the court in overruling the motion for new trial; and these two specifications are discussed by appellant under his third subhead. So far as the issues, presented by the pleadings in this case for the appellants as a defense, are alleged, it is a denial of the allegations of the appellee and the negligence of the appellee. The defense of assumption of risk is not tendered by the appellant in his answer. In St. Louis Cordage Co. vs Miller, 126 Fed. 497, 61 C. C. A. 479, 63 L. R. A. 551, the court said: "The defendant did not plead in this case that the plaintiff was guilty of contributory negligence. Its only defense was that the rapidly revolving cogs were seen and known by the plaintiff, that the danger from them was apparent, and that she assumed the risk of it. These are the questions, therefore, which the instruction to the jury presents."

It thus appears that the defense of contributory negligence presented in this case was not before the court in that case. The court in that case clearly presents the distinction existing between the defenses as follows: "Assumption of risk is the voluntary contract of an ordinarily prudent servant to take the chances of the known or obvious dangers of his employment, and to relieve his master of liability therefor. Contributory negligence is the causal action or omission of the servant without ordinary care of consequences. The one rests in contract, the other in tort. Contributory negligence is no element or attribute of assumption of risk. The latter does not prevail because the servant was or was not negligent in making his contract and in exposing himself to the defect and danger which injured him, but because he voluntarily agreed to take the risk of them. No right of action in his favor in such a case can arise against the master, because the latter violates no duty in failing to protect the servant against

risks and dangers which the latter has voluntarily agreed to assume and to hold the former harmless from. This clear distinction between assumption of risk and contributory negligence has been repeatedly announced and constantly maintained in the Federal Courts and in most of the courts of the states. The law upon this subject which controls this case and all cases of this character in the Federal Courts is stated in Washington, etc., R. Co. vs McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235, in the quotation which follows, and, so far as our investigation has extended, the rules of law thus announced have never been disregarded or modified by that court in any subsequent decision: 'Neither individuals nor corporations are bound, as employers, to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employes; nor are they bound to supply the best and safest or newest of those appliances for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master fails in this duty of precaution and care, he is responsible for any injury which may happen through a defect of machinery which was, or ought to have been, known to him, and was unknown to the employe or servant. But, if the employe knew of the defect in the machinery from which the injury happened, and yet remained in the service and continued to use the machinery without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is entitled to no recovery. And, further, if the employe himself has been wanting in such reasonable care and prudence as would have prevented the happening of the accident, he is guilty of contributory negligence, and the employer is thereby ab-

solved from responsibility for the injury, although it was occasioned by the defect of the machinery, through the negligence of the employer.' Here the two defenses of assumption of risk and contributory negligence are separately stated, and the first failed because the servant 'did not know that the belt in which he was caught had been recently and perhaps imperfectly repaired,' and 'was wholly unaware of the danger attendant upon putting on the belt by hand,' while the defense of contributory negligence failed because the defendant failed to satisfy the jury that the servant was not exercising ordinary care in placing the belt upon the pulley. In Union Pacific Ry. Co. vs O'Brien, 161 U. S. 451, 454, 456, 16 Sup. Ct. 618, 40 L. Ed. 766, the Supreme Court sustained a refusal to submit an instruction to the jury upon the express ground that it confused these two distinct defenses—assumption of risk and contributory negligence. Its words were: 'The second instruction was properly refused because it confused two distinct propositions, that relating to the risks assumed by an employe in entering a given service, and that relating to the amount of vigilance that should be exercised under given circumstances.' " Also: "Assumption of risk and contributory negligence are separate and distinct defenses. The one is based on contract, the other on tort. The former is not conditioned or limited by the existence of the latter, and is alike available whether the risk assumed is great or small, and whether the danger from it is imminent and certain or remote and improbable." The appellee in this action seeks a recovery by reason of the alleged negligence of the appellant in furnishing a hand car that was not safe; "that this plaintiff was not skilled in machinery and was not aware of the condition of said hand car; that, in fact, the said hand car was very badly worn and the rims of the wheels were not sufficient to hold it on the track, and the axles and boxes of said hand car were so badly worn that said hand car was liable at any time

to jump the track; that one of the wheels of said car was out of line in such way as to have a tendency to climb the rail and throw the car off the track;" that while appellee, in the exercise of due care in pumping said car, "said car, as a result of its defective condition as aforesaid, caused by defendant's negligence in furnishing the same in said condition and failing to inspect same 'and to repair the same, jumped the track just north of a bridge, about $1\frac{1}{2}$ miles south of Big Cabin, I. T."; that plaintiff was thrown over a bridge and injured; and "that the proximate cause of all his said injuries to this plaintiff was neglect of the defendant, in that it did not furnish a hand car suitable and safe for the purpose, and did not inspect it so as to ascertain its condition." The only defense pleaded is contributory negligence. In Beach on Contributory Negligence, § 7, the same is defined as follows: "Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of. To constitute contributory negligence, there must be a want of ordinary care on the part of the plaintiff, and a proximate connection between that and the injury. Perhaps, besides these two, there are no other necessary elements. Certainly they are the two points of difficulty in the consideration of the question; 'Did the plaintiff exercise ordinary care under the circumstances?' 'Was there a proximate connection between his act or omission and the hurt he complains of?' These are the vital questions when contributory negligence is the issue."

In actions for recovery of damages by reason of negligence, the facts of each particular case must be carefully considered: The court very properly instructed the jury in this case that it was a duty resting upon the appellant to furnish

reasonably safe machinery to its employes, and to maintain
the same in reasonable repair. "The care demanded of a
railroad company implies the exercise of reasonable diligence.
As between employer and employe, it implies such watchfulness,
caution, and foresight as under all circumstances of the par-
ticular service ought to be exercised by careful and prudent
men." The burden was upon appellant to show that appellee
was guilty of contributory negligence by riding upon the car
and remaining in the employ of appellant. The proof was
submitted to the jury; and, while there was some conflict in the
testimony as to the hand car being defective, no one seemed
to be absolutely certain what it was. The appellee testified
he did not know, except that it was hard to pump. He was
also using ordinary care in the performance of his duty. One
of the witnesses, who was also an employe, applied to the
foreman for permission to repair the hand car, but the foreman
declined to permit him to do so, and said he would attend
to that. It was shown that the foreman was authorized and
directed to inspect the car. He says he looked to see that
the brasses were all right. But not until after the accident,
when the hand car was taken apart, did any one know the
extent of the defect. It was then found to be in an exceedingly
defective condition.

It is insisted by appellant that the appellee and the
foreman were fellow servants, and that, therefore, there could
be no recovery. This is unquestionably correct, but it is held
in the case of Hough vs Texas & P. Ry. Co., 100 U. S. 213,
25 L. Ed. 612, that where the master imposes upon a co-servant
the performance of a duty which the master owes to the em-
ployes, and that co-servant is negligent in performing that
duty, the master must respond for any injuries following there-
from, and "the corporation is equally chargeable whether the
negligence was in originally failing to provide or in afterwards

failing to keep its machinery in safe condition.". In Union
Pacific R. R. Co. vs Snyder (U. S.) 14 Sup. Ct. 756, 38 L. Ed.
597, the court says it is the duty of the company to inspect,
and that this duty cannot be delegated so as to shield the
company from liability when a servant is injured, and that
the company cannot claim that it has performed its duty in
this regard when it has furnished sufficient and competent
inspectors. In Northern Pac. R. R. Co. vs Peterson, 162
U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, the court say:   "The
general rule is that those entering into the service of a common
master become thereby engaged in a common service and are
fellow servants, and, prima facie, the common master is not
liable for the negligence of one of his servants which has resulted
in an injury to a fellow servant.   There are, however, some
duties which a master owes, as such, to a servant entering
his employment.   He owes the duty to provide such servant
with a reasonably safe place to work in, having reference to
the character of the employment in which the servant is en-
gaged.   He also owes the duty of providing reasonably safe
tools, appliances, and machinery for the accomplishment of
the work necessary to be done.   He must exercise proper
diligence in the employment of reasonably safe and competent
men to perform their respective duties, and it has been held
in many states that the master owes the further duty of adopting
and promulgating safe and proper rules for the conduct of
his business, including the government of the machinery and
the running of trains on a railroad track.   If the master be
neglectful in any of these matters, it is a neglect of a duty which
he personally owes to his employes, and, if the employe suffer
damage on account thereof, the master is liable.   If, instead
of personally performing these obligations, the master engages
another to do them for him, he is liable for the neglect of that
other, which, in such case, is not the neglect of a fellow servant,
no matter what his position as to other matters, but is the

neglect of the master to do those things which it is the duty of the master to perform as such." Mr. Thompson on Negligence, § 4445, says: "Under the principles of this chapter, if a railway company fails to exercise reasonable care and skill in providing and maintaining hand cars which are reasonably safe and free from dangerous defects, in consequence of which failure of duty their employes, required to use such cars, are injured, they will be liable to them in damages; nor will the fact that the section foreman in charge of the hand car, whose duty it was to keep it in repair, was a fellow servant of the servant sustaining the injury, avert the liability of the company, since the proper inspection and reparation of such cars is one of the absolute duties which the law puts upon the master in favor of his servants."

The appellant objected to the charge of the court that the burden of proof was on the defendant to show contributory negligence. In Northern Pacific R. R. Co. vs Mares, 123 U. S. 721, 8 Sup. Ct. 327, 31 L. Ed. 296, it is said: " 'And the defendant having alleged negligence on the part of the plaintiff, denominated "contributory negligence," it must be established by preponderance of evidence to warrant you in finding it. .The objection, as we understand it, is that it was calculated to mislead the jury by not only putting the burden of proof of the fact on the defendant, but also in assuming that they must look for that proof only to the testimony adduced by the defendant. We do not, however, think it possible that any jury could be misled in that way. The whole effect of the charge is that the fact in question must be established from the whole testimony, by a preponderance of evidence in its favor. Where the burden of proof rested was immaterial at that stage of the cause when all the evidence was in, and the jury certainly could not suppose that they were confined, in their examination of that question, to the

testimony adduced only on the part of the defendant. On
the whole case it abundantly and satisfactorily appears that
the cause was submitted to the jury, upon the charge of the
court, fairly, and with an accurate statement of the law ap-
plicable to the relation between the parties. We find no er-
ror in the record. The judgment is accordingly affirmed."
The charge of the court was: "It is claimed by defendant
in this case that plaintiff in remaining in its employ and riding
on the hand car after knowledge of its defective condition was
guilty of negligence which contributed to his injury. The
burden of proving this is on the defendant. It may establish
this either by the evidence it introduces or by plaintiff's evi-
dence"—which is in harmony with the foregoing citation. See,
also, 93 U. S. 291, 23 L. Ed. 898, in the case of Indianapolis
& St. Louis R. R. Co. vs Horst.

Much discussion by the counsel on both sides of this
case is devoted to the defense of the assumption of risk, which
in our judgment was not an issue presented by the pleadings.
In Oregon Short Line & U. N. Ry. Co. vs Tracy, 66 Fed., page
936, 14 C. C. A. 204, the court said: "It is assigned as error
that the court excluded evidence offered by the defendant
tending to prove that the plaintiff knew the condition of the
track where the accident occurred, and that he therefore as-
sumed the risks incident thereto. The defendant had not
pleaded such knowledge upon the part of plaintiff, and the
ruling of the court was in accordance with the doctrine es-
established by the authorities. 14 Am. & Eng. Enc. Law,
844; Mayes vs Railroad Co., 63 Iowa, 562, 14 N. W. 340, and
19 N. W. 680; Hulehan vs Railroad Co., 68 Wis. 520, 32 N.
W. 529; Railroad Co. vs Orr, 84 Ind. 50. The doctrine of
these decisions is that the assumption of the risk after knowl-
edge of the defects is matter of defense in the nature of a waiver
of the right to recover for the defendant's negligence, and

must be pleaded." The evidence was conflicting as to the condition of the hand car, and as to its proper inspection. A peremptory instruction would have been improper, and the court, in our judgment, acted properly in submitting the case to the jury. We do not feel at liberty to disturb their verdict, and the judgment of the court in refusing a new trial, and rendering judgment on the verdict, was correct, and is affirmed.

CLAYTON, J., concurs. LAWRENCE, J., dissents.

LAWRENCE, J. (dissenting). Appellee, four others, and a foreman composed a section gang in the service of appellant upon a section of its road some six miles in length, between the stations of Big Cabin and Adair, in this territory. The duties of the gang were to daily pass over the section and keep the track and right of way in repair and good condition for the passing of trains thereon. Tools, appliances, and material were furnished them for this purpose by appellant. One of the appliances was a hand car, which was propelled by the men by means of levers connected with the axle, or journal, by cogs. This car was used in conveying the men to and from their work morning and evening, and in moving themselves, the tools, and material from place to place along the section, when necessary, during their work. It had been used upon this section 14 months, and had prior thereto been used upon other sections of appellant's road. It had become worn by use to the extent that there was more than normal play of the wheels back and forth, the only observable and known effect of which was to make necessary an increase in force and labor to propel the car. Complaint was made by the men to the foreman because of the increase of labor necessary to move the car. One of them, named Westover, who stated that he had had long experience as a machinist and engineer,

requested permission of the foreman to overhaul the car for the purpose of remedying the defect. This request was made several months prior to the time of the receiving of the injury complained of herein by appellee. A month before the accident Westover again requested permission to make the supposed needed repairs, and he was informed by the foreman that he, the foreman, had something else for this hand, Westover, to do. In the afternoon of February 2, 1903, while the gang including the foreman, were performing their duty, riding upon the car, with appellee and another at the levers, pushing it down a grade at the rate of five or six miles an hour, suddenly and without warning the car ran off the track, and all of the gang, except one, were violently thrown off the car, and some of them quite seriously, though not dangerously, hurt. The appellee received a number of bruises and contusions upon his body, one contusion upon the head, which was only a scalp wound, and a broken bone of the left arm below the elbow. This was the first accident that had occurred with this car since it was put in use upon this section, though it had been in daily use since that time. The foreman testified that it was his duty to employ and discharge the men of the gang as he might deem necessary, to be with them during their work and to superintend it, to inspect and repair the tools and appliances, and, if found necessary, to send them in to appellant's shops for repair. He further testified that he had frequently examined the hand car prior to the accident and repaired the same; that he considered it safe; that it was of standard make, and the kind in use generally; that the only complaint ever made by the men concerning it was because of the hard work required to make it go. He further stated that he had worked upon a section as assistant foreman and foreman since April, 1901, and that the car at the time of the accident was in a reasonably safe condition for use as a hand car. No witness testified, and no evidence appears in the

record, showing, or tending to show, that the derailment of the car was the result of any of the alleged defects in the car. No one ever passed an opinion upon this matter. No expert of any kind, unless it was Westover, testified on behalf of the appellee. A number of experienced railroad men, machinists, section-men, and section foremen testified in behalf of appellant, and all of them concurred in the opinion that the derailment of the car was not the result of any of the defects alleged in the complaint or appearing in the proof. One Curry, who stated that he was a section foreman for the Frisco Road, had been for 15 years, and had been in their track department for 20 years, and had been running hand cars for that length of time, testified that he had never known, and did not believe, that a derailment of a hand car could occur because of such alleged defects; that he had known of derailments of hand cars, but it was "by splitting the frog, the spring frogs, on account of the guide rail not being in proper shape, and I have had them jump the track on account of spikes being stuck down in the joints of the expansion." No witness testified that an examination was made by any one to determine the direct, or even remote, cause of the derailment.

Appellee testified that he had been for 17 months in the employment of appellant, and 14 months of this time working upon this section with this hand car; that he was not experienced in the use of machinery, had been a farm hand before employed by appellant; that he had not any knowledge or information of the defective condition of the car until this injury of which he complains; that he is 29 years of age, and at the time of the injury was earning $1.25 a day. He further testified that he had not been able to perform manual labor since he was hurt, that he yet suffered pain from his wounds and bruises, and that his broken arm had not yet knit, and he could hear the bones "grit" when he moved it. He offered no medical

proof or any competent proof as to the extent of his injuries, or as to the probability, or otherwise, of his injuries being permanent to the degree of rendering him unable. to perform manual labor of the kind he was-used to following, or of like character to that in which he was employed when injured. He did state that he was informed and believed that his injuries were permanent, and this is the only proof upon this point, if it can be called proof. There was no evidence that he received medical or surgical treatment for his injuries, except that he was examined by the appellant's surgeon at the time of the injury. At the close of the testimony appellant requested the court to instruct the jury to return a verdict for the defendant. This request was denied, and appellant excepted. There was no instruction given the jury as to the measure of damages, nor any direction of the court to guide it as to a proper method of considering the amount of damages to be given plaintiff. Plaintiff claimed $10,000 in his complaint, and received a verdict and judgment for $7,000. Defendant then made a motion that the verdict and judgment be set aside and new trial given. Among the several causes assigned as ground for vacation of verdict and judgment, and granting a new trial, was one that the court erred in refusing to grant appellant's request to direct a verdict for defendant; and another was that the verdict was excessive. This motion was denied, and the same grounds of error appear in the assignment of errors in this court.

I am unable to concur with the majority of the court in its opinion in this case. The facts above stated embrace all that are deemed material and which are necessary, and which furnish the ground of a dissenting opinion. The only alleged cause of action was the negligence of the appellant in failing to furnish a reasonably safe hand car and to maintain it in safe condition, and that by reason of this alleged negligence

the injury resulted, for which the recovery of $10,000 damages
is sought in this action.     In all cases of this kind, where damages
are sought for injuries received by an employe through ac-
cident, while performing the usual and ordinary duties of his
employment, the burden is upon the plaintiff, employe, to
show the proximate cause of the accident in which he was
injured, and that this proximate cause was due to the negli-
gence of the defendant, employer.   The refusal of the trial
court to instruct the jury to return a verdict for defendant,
as requested by it, at the close of the evidence, was clearly
such error as authorizes a reversal of its judgment.   In the
case of Patton vs Texas, etc., R. Co., 179 U. S. 658, 21 Sup.
Ct. 275, 45 L. Ed. 361, which is upon all fours with the case
at bar, and, we submit, of controlling weight, the court, by
Brewer, J., says:   "The plaintiff's contention is that the trial
court erred in directing a verdict for the defendant and in
failing to leave the question of negligence to the jury.   That
there are times when it is proper for a court to direct a verdict
is clear."   Quoting from numerous decisions of the United
States Supreme Court, it further says:   "It is well settled
that the court may withdraw a case from them altogether
and direct a verdict for the defendant or the plaintiff, as the
one or the other may be proper, when the evidence is undisputed,
or is of such conclusive character that the court, in the exercise
of sound judicial discretion, would be compelled to set aside
a verdict returned in opposition to it.     *     *     *     The
judge is primarily responsible for the just outcome of the trial.
He is not a mere moderator of a town meeting, submitting
questions to the jury for determination, nor simply ruling on
the admissibility of testimony, but one who, in our jurispru-
dence, stands charged with full responsibility.   He has the
same opportunity that jurors have for seeing the witnesses,
for noting all those matters in a trial not capable of record,
and when in his deliberate opinion there is no excuse for a verdict

save in favor of one party, and he so rules by instructions to
that effect, an appellate court will pay large respect to his
judgment."

It is a proposition that does not admit of dispute that
one who seeks to recover damages for an injury because of the
negligent act of another must prove that the injury was the
proximate result of the act.   The act of negligence alleged
in this case was the failure of appellant to furnish and maintain
at all times a hand car used by appellee and his fellow work-
man in the course of their employment reasonably safe for such
use.   It was alleged that the car was negligently allowed to
become out of repair.   "The wheels were badly worn, the
rims of the wheels were not sufficient to hold it on the track,
and the axles and boxes of the car were so badly worn that
said car was liable at any time to jump the track; that one
of the wheels of said car was out of line in such way as to have
a tendency to climb the rail and throw the car off the track."
These are the sole defects which are alleged as the cause of
the injury.   Conceding that these acts of negligence existed,
and that they were of degree sufficient to justify a verdict
for damages, if established by the evidence, yet an additional
and necessary fact must appear by the weight of the evidence
—that this defective condition of the car was the direct cause
of its derailment and the consequent injury of which appellee
complains.   There was no direct, circumstantial, or even
remote evidence tending to prove such proximate cause.   No
examination or investigation was made by any one as to the
condition of the track or in regard to obstructions that might
have -caused the derailment.   One Curry, a witness for ap-
pellant, stated that he had had years of experience as a section
foreman, and as trackman, and was at the time of testifying
a section foreman upon "The Frisco," upon a section in the
immediate vicinity of the accident, and that he had never

known a hand car to jump the track for the causes alleged; that he had known this to happen because of a defective track, and from a spike driven in the expansion of the rails. And the common experience of every one of mature years is sufficient to justify the conclusion, from a description of the car·in question, that it might readily have left the track while moving at the rate and with the load it carried as appears from the evidence from a variety of causes not attributable to the defective condition of the car. The statement of facts above made was the result of careful reading of the entire record of the evidence, and it shows·an utter want of evidence to negative any one or more of the causes liable to produce a leaving of the rails by the hind wheels of the car. I cannot do better in this connection than to again quote from the above opinion of the United States Supreme Court: "That while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is prima facie a breach of his contract to carry safely, a different rule obtains as to an employe. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employe to establish that the employer has been guilty of negligence. In the latter case it is not sufficient for the employe to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And when the testimony leaves the matter uncertain, and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between those half dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion.     *     *     *

There is no guaranty by the employer that place and machinery shall be absolutely safe." It is to be observed from the statement of facts that the foreman of the gang, who testified that it was his duty to examine the machinery and condition of the car, and to make repairs, unless they were of such kind as required the car to be sent to appellant's shops, also testified that he had made such inspection frequently and had done so shortly before the accident, and found the car in safe condition, and that it was so at the time of the accident. There is not any testimony to the contrary, though all of the men, except appellee, stated that the car run hard, and that the wheels and boxes in which the spindles of the axles revolved were worn. Yet no one said in testimony, nor does it appear otherwise than in the complaint, that such condition of the car even had a tendency to cause it to leave the track.

The first blush, after reading the testimony contained in this record, is raised by the excessive dimensions of the verdict in proportion to the meagerness of the evidence which supported it. It is out of all proportion and all reason. The appellee had been in the employment of appellant for 17 months and received $1.25 a day. Before this employment he worked upon a farm. He testified that he was ignorant of machinery, and did not even know that the simple machinery of the hand car was defective after 14 months of handling of it. Not a particle of medical proof was offered as to the character of his injuries or of the probability of the injuries being permanent, or so severe as to prevent him from performing manual labor of the kind he was used to performing. There was no evidence that he had received any medical or surgical attention for his injuries, except that he was examined by the appellant's surgeon at the time of the injury. It is not known whether the broken arm was ever set, bandaged, or in any manner treated with a view to its being healed. His testimony is

that he "can yet hear the bones 'grit,' " when he moves his
arm, which is significant of the fact that it had not been cared
for in any manner. His testimony is that "he has been in-
formed that his injuries are permanent." The source of his
information is not given. The statement, while not com-
petent as evidence, is an indication that he has not any opinion.
Moreover, there was no evidence produced or offered that he
paid out anything for medical services, medicine, nursing,
or any other supposed special damages except the loss of one
year's time. This verdict and judgment is certainly excessive,
and the court should have granted a new trial for this cause
alone, and erred in not sustaining this ground for a new trial.

This court should have sustained this assignment of
error, as well as the other above considered, reversed the judg-
ment of the lower court, and remanded the case for another
trial.