# G. U. NORTON v. R. C. PARSONS ET AL.

## May Term, 1895.

*Leading questions may be asked when one is called to contradict a witness. Examination of witnesses. Cross-examination. Amendment to bill in equity.*

1. For the purpose of showing that the words "Rock Island Whip Co." referred to a former company and not to the one in which the orator and defendant, St. Pierre, were partners, the orator testified that the lawyer who drew the articles had said in the presence of himself and St. Pierre that the words had that meaning. Thereupon St. Pierre was inquired of whether he ever heard such a suggestion, and the answer was taken subject to the orator's exception, that the question was leading and incompetent. *Held*, no error, for, so far as the witness was called to contradict the orator, he might be inquired of leadingly, and as to the further scope of the answer the orator was not harmed.

2. A witness may be asked whether he heard certain words or "that in substance," for this refers to the substance of the words and not their meaning.

3. When the objection to a question is such that it can be obviated, correct practice requires that the ground of the objection should be stated.

4. *Held*, that the orator's right of cross-examination was not abridged in case of a witness who had answered that he could not tell, before the master ruled that he need not answer.

5. As a rule, no amendment should be allowed upon final hearing which changes the substance of the bill.

Bill in equity. Heard upon the pleadings, a master's re-

port, and exceptions of both parties thereto, at the September term, 1894, Orleans county.   TYLER, chancellor, overruled the exceptions and dismissed the bill as to both defendants.   The orator appeals.

The orator had for some time been engaged in the whip business at Derby Line previous to March 1st, 1889, under the firm title of the Rock Island Whip Company.   About that time he formed a copartnership with the defendant, St. Pierre, and the business continued to be conducted after the formation of said partnership as it had been before, under the title of the Rock Island Whip Company.   The orator alleged in his bill that about July 1st, the defendant, St. Pierre, without his knowledge or consent, took goods belonging to the partnership to the value of one thousand dollars, and sold them to the defendant, Parsons, for about five hundred dollars and delivered them to the defendant, Parsons; that said pretended sale was not made in due course of business nor *bona fide*, nor with the knowledge and consent of the orator, but that St. Pierre delivered and Parsons received the goods and converted them to his own use, well knowing that St. Pierre intended to defraud the orator by the means.

The orator prayed that the court would ascertain the value of said goods and decree payment for the same to the orator for the benefit of the co-partnership.

The master found that St. Pierre took the goods for the purpose of withdrawing so much from the copartnership and sold them to Parsons with the intent of applying the avails to his own use; that Parsons bought the same because he believed he was making a good trade, and not with any intent of defrauding the orator, nor with any knowledge that St. Pierre proposed to appropriate the funds to his own use.

The various points raised by the orator's exceptions appear in the opinion.

*A. D. Bates* for the orator.

The question put defendant, St. Pierre, was a leading one. The orator's objection to that effect was overruled by the master, as a matter of·law, and therefore the admission of the question and answer was legal error. *State* v. *Bedard*, 65 Vt. 278 ; *State* v. *Glynn*, 51 Vt. 577.

*Dickerman & Young* for the defendants.

The defendant, St. Pierre, was properly asked whether he intended to defraud the orator by a sale to Parsons. *Hulett* v. *Hulett*, 37 Vt. 581 ; *McDaniels* v. *Robinson*, 26 Vt. 316 ; *Stearn* v. *Clifford*, 62 Vt. 92 ; *Ballard* v. *Burton*, 64 Vt. 387 ; *Stearns* v. *Goselin*, 58 Vt. 38.

ROWELL, J.   The orator and the defendant, St. Pierre, were partners in the whip business, and their firm name was The Rock Island Whip Company.   Before and at the time of the formation of their partnership, the orator had been and was carrying on the business under the same name.   The co-partnership agreement between them provided that neither should draw any money from the partnership funds during the term, above his salary, except what might be " required for the payment of the debts of The Rock Island Whip Co." To show that the debts of the old company were thereby meant and not the debts of the new, the orator testified before the master without objection that said agreement was drawn by attorney Hackett, who said to him and St. Pierre when it was drawn, that said words, " The Rock Island Whip Co.," meant the old company and not the new.

To meet this, St. Pierre was asked on the stand, whether he ever heard a suggestion or claim made by the orator or Hackett, before or at the time said agreement was drawn, that said words meant the old company and not the new. The question was objected to as leading and incompetent; but the objection was overruled as matter of law, and the witness answered it in the negative.

As to the objection that the question was leading, it was properly so as far as it related to what the orator testified that Hackett said at the time the agreement was drawn, for it has long been quite the practice in this state, when a witness is called to contradict one who has said that such a thing was said or done, to ask leadingly whether the thing was said or done, although for one, I think the non-leading method is preferable even here.

As far as the question related to time antecedent to the time when the agreement was drawn, the answer could not have harmed the orator, for it was simply impossible for the witness to have heard either of those persons say anything about the meaning of those words as used in the agreement before it was drawn ; and as far as it related to what the orator did or did not say at the time it was drawn, the answer could have done no harm, for the orator made no claim of having said anything at the time, and clearly, in the circumstances, no unfavorable inference could have been drawn against him from his silence.   Nor was the question irrelevant in the part that went to the matter of the orator's testimony ; and if irrelevant in the rest, the answer was harmless, as we have seen.

St. Pierre was further asked whether he heard the defendant, Parsons, say at a certain interview at which the orator and the defendants were present, that he had bought the whips in controversy and paid for them, but would return them if his money was refunded, " or that in substance." To this question the orator objected as leading and incompetent ; but the objection was overruled as matter of law, and the witness answered, "I did."   Before this, the orator denied on cross-examination that Parsons said any such thing at that time.   The criticism of the question is now bestowed wholly on the words, " or that in substance," for that they left the witness free to put his own interpretation upon what Parsons said, without stating the substance of the language

34

he used.   But we construe those words to refer to the language used by Parsons and not to its meaning, as if they had been, "or those words in substance."   In this sense the question was perfectly proper; and if the orator thought in the time of it that the witness was undertaking to give the substance of what Parsons meant instead of the substance of what he said, he could easily have found out how it was by inquiry.

What is said of this question is an answer to a similar objection to the eighth question put to this witness, and also to the objections to questions fourteen and fifteen put to the witness Darling.

The orator claimed that the sale in question was fraudulent as to him on the part of both defendants, and so St. Pierre was asked whether it was *bona fide* or not, or whether he retained an interest in the whips after they were delivered to Parsons and paid for.   The orator objected to the question, but did not state the ground of his objection, and the objection was overruled and the question answered. When objection to a question is such that it can be obviated, as this was, correct practice requires that the objection be stated, that the examiner may obviate it by reforming the question if he will.   This rule is especially applicable to depositions; but it is a good general rule, and promotive of justice, for otherwise the objection would serve merely as a trap in which to catch the other party.

The complaint that the orator was improperly precluded from cross-examining the witness Norris concerning the prices he paid for thread in 1893 is not well founded, for before the master ruled that the witness need not answer, because his company had agreed with the firm of which it bought not to divulge the prices, he had answered that he could not tell, as he had no list present.   This was a full answer to the question put, as far as the prices of thread were concerned; and as there was and is no suggestion that the

answer was not true, it seems reasonably clear that the ora-
tor could have gained nothing, in the circumstances, by fur-
ther inquiry.

The sole ground of the bill for recovery against Parsons
is, that he purchased the whips for the purpose of defraud-
ing the orator; and as this is negatived by the findings of
the master, no decree can be had against him on the facts
disclosed. Nor can there be a decree against St. Pierre as
the case stands, both on the pleadings and the facts; for he
must be charged, if at all, as partner, and the bill does not
seek to charge him as such, and indeed does not seek to
charge him at all, for in allegation and special prayer it
seeks to charge Parsons only; and the facts found are no
more to the purpose of charging St. Pierre than the bill is.
It thus clearly appears that hitherto the orator has not de-
signed to charge St. Pierre in this action, but only Parsons;
but he now asks that the decree in favor of St. Pierre be re-
versed, that he may proceed against him for a settlement of
their partnership affairs. But to proceed thus would neces-
sitate an amendment of the bill that would make an entirely
different case from what is now made by it. While the
allowance of amendments of equity pleadings is matter of
discretion, the exercise of which will depend largely on the
special circumstances of the case, yet great caution should
be used when the application comes, as here, after the liti-
gation has continued a considerable time and reaches the
court of last resort; and an amendment should rarely, if
ever, be allowed when it would materially change the very
substance of the case made by the bill and to which the par-
ties have directed their proofs. *Hardy* v. *Boyd*, 113 U. S.
756. In *Lyon* v. *Talmadge*, 1 Johns. Ch. 184, it is said
that the indulgence of amendment should not be carried to
the extent of granting leave to make a new bill; that if the
bill be found defective in prayer for relief, in want of par-
ties, or in the omission or the mistake of a fact or circum-

stance connected with the substance of the case but not constituting the substance itself, an amendment is usually granted; but that the substance of the bill must contain ground for relief, and that there must be equity in the case when fully stated and correctly applied to the proper parties, sufficient to warrant a decree.   See, also, *Hill* v. *Hill*, 53 Vt. 578.

This rule would preclude the orator from obtaining leave to make the necessary amendment if the decree against St. Pierre should be reversed for the purpose asked, and therefore a remand for that purpose would not avail him.

*Decree affirmed and cause remanded.*