# UNION PACIFIC RAILWAY COMPANY *v.* O'BRIEN.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 119. Argued and submitted December 18, 1895. — Decided March 2, 1896.

A railroad company is bound to provide suitable and safe materials and structures in the construction of its road and appurtenances, and if from a defective construction thereof an injury happen to one of its servants the company is liable for the injury sustained.

The servant, on his part, undertakes the risks of the employment as far as they spring from defects incident to the service, but he does not take the risks of the negligence of the master itself.

The master is not to be held as guaranteeing or warranting absolute safety under all circumstances, but is bound to exercise the care which the exigency reasonably demands in furnishing proper roadbed, track, and other structures, including sufficient culverts for the escape of water collected and accumulated by embankments and excavations.

There are cases in which, if the employé knows of the risk and the danger attendant upon it, he may be held to have taken the hazard by accepting or continuing in the employment; but this case, as left to the jury under the particular facts, is not one of them.

THIS was an action brought by Nora O'Brien against the Union Pacific Railway Company, in the Circuit Court for the District of Colorado, to recover damages for the death of her husband, John O'Brien, who was in the employment of the defendant as a locomotive engineer, running on the South Park division of the company's line, and was killed by the derailment of his engine. The evidence tended to show that at the time of his death O'Brien, who had been an engineer upon the road for seven or eight years, was bringing a freight train of twenty-three cars from Como, Colorado, to Denver, and was running through that part of the mountains known as Platte Cañon; that O'Brien left Como at seven or eight o'clock on the evening of September 3, 1890, and that the accident occurred at one o'clock in the morning of September 4; that the line of railway followed the course of the South Platte River, and that there were numerous cuts thereon caused by the intersection of the line with the spurs projecting from the foot hills along which the line was built; that the locomotive was derailed by reason of sand and gravel which had been deposited on the track to a depth of some seven or eight inches and to the extent of from ten to twenty feet; that this deposit was in a cut, approached by a curve to the left, and then curving to the right as the track entered the cut, a double curve; that the river bank of the cut was about seven or eight feet high, the other bank being much higher and very steep, sloping back up the mountain side; that down the upper bank ran a narrow gully which in rainy weather brought down water, carrying sand and disintegrated rock; that this gully had had an outlet into the river before the track was constructed across it; that there was no opening or culvert under the railroad track through which the water and material brought down could escape; that a small ditch ran alongside the roadbed, but if the water coming down was greater in quantity than this ditch could carry, then the sur-

plus would run over and upon the tracks of the railroad; and that rain had fallen the evening previous to the accident, and the water rushing down the gully had deposited this mass of sand and gravel upon the track. There was some evidence that the gully was narrow, crooked, and concealed by the hills.

One Hall, a locomotive engineer, familiar with the road, testified that there were many cuts on the line; that sand was frequently found thereon in several places; that there were usually rains about the latter part of August or September, and that in rainy weather, on account of the steepness of the mountains, more or less material would be deposited on the track. Defendant then propounded this question on cross-examination, "Are the engineers here aware of that fact?" to which plaintiff's counsel interposed an objection, which was sustained, and defendant excepted. The witness had also testified that a culvert would have added to the safety of this cut, and was asked this question by defendant: "You said you thought the culvert would make it much safer, but is not that cut constructed there, and the water run out of it exactly as the cuts are ordinarily constructed on roads running through such places?" The question was objected to, the objection sustained, and defendant excepted.

George Warnick, the locomotive fireman who was on the engine when the accident happened, gave evidence on defendant's behalf tending to show negligence on the part of deceased, and was asked on cross-examination whether he had in answer to certain specified questions put to him at the hospital on the Sunday following stated that neither he nor the engineer was to blame for the accident. This he denied, and leading questions were permitted to be propounded to a witness called in rebuttal to contradict him, to which exceptions were saved.

Defendant asked the court to give the jury the following instructions:

"1. The court is asked to instruct the jury that the burden of proof is upon the plaintiff to show that the accident occurred by reason of the negligence of the defendants, and

that the plaintiff was in the exercise of due care at the time of the accident, and that due care in such a case required of the deceased that he be vigilant and watchful to avoid such danger as his experience of the road must have made him aware he must expect in such places as the place where the accident occurred, and under the circumstances detailed by the witnesses, to wit: at a time when heavy rains had been met with, and that there has been offered no evidence whatever upon that point by the plaintiff, not even a reputation for care, but there has been evidence offered by defendant that he was not in the exercise of due care; nor has there been any evidence offered as to whether if the sand had been discovered at the time it might have been discovered he could or could not have applied the air in time to prevent the accident.

"2. The court is asked to instruct the jury that a party taking employment as an engineer in running a locomotive assumes the risks that are incident to the employment and to the running of locomotives over the roads operated by his employer, and if the jury believe that the country through which this road ran and its location was such that sand was frequently deposited on the track, then the deposit of sand on the track when heavy rains occurred must be taken as one of the ordinary risks of his employment, and the duty of the engineer was to be vigilant in avoiding it; and if the jury believe that the lack of such vigilance on the part of deceased contributed to the accident, then the plaintiff cannot recover.

"3. The court is asked to instruct the jury that the duty that an employer owes to the employé is to exercise ordinary care in providing the employé a safe place in which to work, and what is ordinary care is such care as men of ordinary prudence use in similar circumstances in the same employment.

"4. The court is asked to instruct the jury that there is no evidence to show that the construction of a culvert at the place where the accident happened would have avoided or would probably have avoided the accident."

The court refused to give each of these instructions, and defendant excepted. .

The court then charged the jury at large, leaving to them the issues of negligence on the part of the company in not properly constructing the track in that no outlet was provided for the water which would be liable to come down on the track and deposit sand and other obstructions thereon, and of contributory negligence.

The court advised the jury, among other things, that, as the road at the place where the accident occurred was built across the mouth of a gulch, and from all the circumstances it would seem that it would have been practicable to make a culvert under the track at that place, keeping open the channel towards the river through which the sand might have washed out, and in that manner obstruction might have been avoided, if they believed from the evidence, taking into consideration the size of the requisite opening and the quantity of sand and gravel coming down through the gulch, and all the circumstances, the track might have been built at reasonable expense so as to avoid the possibility of the sand coming upon the track and obstructing it, they were at liberty to find that the company was negligent in respect to the manner of building the track at that place. And also that, independently of the testimony of Hall on that subject, the jury, "having regard to the testimony before you, the situation of the road and the topography of the ground, the gulch coming down in the way described by the witnesses," might on their own judgment and knowledge of such matters determine in their own minds "whether it was practicable to make a culvert there with reasonable cost, which would have the effect of carrying away the sand and gravel so it would not be an obstruction upon the track."

To these parts of the charge defendant excepted.

The jury found in favor of plaintiff, and judgment having been entered on the verdict, the company carried the case to the Circuit Court of Appeals for the Eighth Circuit, which affirmed the judgment. 4 U. S. App. 221.

. Thereupon this writ of error was brought.

*Mr. John M. Thurston,* (with whom was *Mr. John F. Dillon* on the brief,) for plaintiff in error.

*Mr. H. E. Luthe* and *Mr. C. S. Thomas,* for defendant in error, submitted on their brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

The Circuit Court of Appeals held that as to the first question which the Circuit Court declined to allow to be put to Hall the answer would have been purely an inference based upon facts previously proven, and an inference which it was for the jury to draw from those facts, and therefore that it was properly excluded; that as to the second question addressed to that witness and excluded, namely, whether the cut was not constructed as cuts were ordinarily constructed on roads running through such places, the court did not err in its exclusion, because railway cuts are not made upon any recognized pattern, and the testimony offered would have been no aid to the jury without further testimony showing that the surroundings of other cuts were substantially similar to those of the cut where the accident happened, which would have involved collateral issues tending to confuse and mislead; and that it was within the discretion of the trial court to permit leading questions to be propounded for the purposes of impeachment. It was also held that the Circuit Court did not err in refusing the first instruction asked for defendant, because the burden of proof was not upon plaintiff to show in the first instance that he was in the exercise of due care at the time of the accident; that the second instruction was properly refused because it confused two distinct propositions, that relating to the risks assumed by an employé in entering a given service and that relating to the amount of vigilance that should be exercised under given circumstances, and because furthermore the instruction was not justified under the evidence; that while it was true that persons employed on lines of railway constructed at the foot of mountain ranges are necessarily subjected to greater dangers than those employed upon

railroads passing over prairie country, and that an engineer on a line running at the foot of a mountain range assumes the increased risk due to this fact, yet the employé does not assume the risks and dangers that are caused by negligence on the part of the company, but has a right to expect that the company will construct and maintain its track and roadbed in such a condition as not to subject its employés to unnecessary risks and dangers, and that it is the duty of such company to use due care to construct its roadbed at a place where it crosses a waterway so that it may be reasonably safe for use, and if it has not done that, a jury may be justified in finding negligence on its part.

And also that there was no error in declining to give the third instruction, inasmuch as it was fully covered in the charge; nor in refusing the fourth instruction because it was not proper under the evidence; nor in those parts of the charge complained of.

In our opinion the Circuit Court of Appeals committed no error in its rulings and in affirming the judgment of the court below, and we are not inclined to restate the reasons for the conclusions reached by that court, which are fully set forth in the case as reported.

The general rule undoubtedly is that a railroad company is bound to provide suitable and safe materials and structures in the construction of its road and appurtenances, and if from a defective construction thereof an injury happen to one of its servants the company is liable for the injury sustained. The servant undertakes the risks of the employment as far as they spring from defects incident to the service, but he does not take the risks of the negligence of the master itself. The master is not to be held as guaranteeing or warranting absolute safety under all circumstances, but it is bound to exercise the care which the exigency reasonably demands in furnishing proper roadbed, track, and other structures, including sufficient culverts for the escape of water collected and accumulated by its embankments and excavations. *Hough* v. *Railway Co.*, 100 U. S. 213; *Texas & Pacific Railway* v. *Cox*, 145 U. S. 593; *Gardner* v. *Michigan Central Railroad*,

150 U. S. 349, 359 ; *Union Pacific Railway* v. *Daniels*, 152 U. S. 684 ; *Chicago & Northwestern Railroad* v. *Swett*, 45 Illinois, 197 ; *Toledo & Peoria Railway* v. *Conroy*, 68 Illinois, 560 ; *Stoher* v. *Iron Mountain Railway Co.*, 91 Missouri, 509 ; *Paulmier* v. *Erie Railroad*, 34 N. J. Law, 151 ; *Snow* v. *Housatonic Railroad Co.*, 8 Allen, 441 ; *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282 ; *Smith* v. *Harlem Railroad Co.*, 19 N. Y. 127 ; *Patterson* v. *Connellsville Railroad Co.*, 76 Penn. St. 389.

It is the duty of the company in employing persons to run over its road to exercise reasonable care and diligence to make and maintain it fit and safe for use, and where a defect is the result of faulty construction which the employer knew or must be charged with knowing, it is liable to the employé if the latter use due care on his part, for injuries resulting therefrom.

There are cases in which, if the employé knows of the risk and the danger attendant upon it, he may be held to have taken the hazard by accepting or continuing in the employment ; but this case, as left to the jury under the particular facts, is not one of them. This engineer was entitled to rely upon the company as having properly constructed the road, and to presume that it had made proper inquiry in respect of latent defects, if there were any, in the construction, for such was its duty, and he cannot be held to knowledge of the danger lurking in this narrow seam in the mountain side by whose inequalities its sinuosities were hidden. We agree with the Circuit Court of Appeals that the Circuit Court properly instructed the jury in this regard, and that no error was committed in allowing the jury to consider the evidence in the light of their own judgment and knowledge, taking into consideration all the facts bearing on the defective construction in question.

*Judgment affirmed.*

Mr. Justice Brewer and Mr. Justice Peckham took no part in the consideration and decision of this case.