## KINZEL v. ATLANTA, K. & N. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. May 11, 1905.)

No. 1,384.

MASTER AND SERVANT—KILLING OF RAILROAD ENGINEER BY LANDSLIDE—ASSUMED RISK.

Plaintiff's intestate, who was a railroad engineer, was killed by a landslide while on his regular run with his train in the mountains of East Tennessee in the nighttime. It had been raining, several slides had occurred, and a number of trains had been abandoned. At a station a few miles north of the mountains, deceased had asked for permission to lay over, on account of the danger of running at night, and because it was thought impossible to get through; but he was directed to proceed slowly and carefully, looking out for slides, and to take with him certain cars, with an extra track gang, to clear the road. The track was also specially patrolled. A trackman was ahead of the train with a lantern at the time of the accident, and the track was clear, but a slide occurred as the engine passed, carrying it and the track into the river below. *Held*, that the death was due purely to an accident, for which the company could not be held liable, and which was a risk assumed by deceased.

[Ed. Note.—Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

V. A. Huffaker and Pickle & Turner, for plaintiff in error.

Smith, Hammond & Smith and Cornick, Wright & Frantz, for defendant in error.

Before SEVERENS and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

RICHARDS, Circuit Judge. This was a suit for the wrongful death of the plaintiff's intestate, Joseph Kinzel, who was a locomotive engineer in the employ of the defendant company, and lost his life in the wreck of his engine, caused by a landslide in the mountains of Tennessee. The court below twice directed a verdict for the defendant on the ground that Kinzel's death was the result of a pure accident, for which the railway company was not to blame, and the risk of which he had assumed. This action is here for review.

The material facts are conceded. Kinzel had been a locomotive engineer for seven years, and for three years had run a freight train south from Knoxville through the mountains into Georgia. Two or three miles south of the station of Wetmore the mountainous region began, and continued for about 22 miles. For the most of this distance the railroad ran along the side of the mountains, at the foot of which flows the Hiawassee river. The steepest part of the line began at Appalachia, about 20 miles south of Wetmore, and extended several miles south to Farner, which is near the sum-

mit. Beyond Farner is Blue Ridge, Ga. Naturally the portion of the line most liable to landslides was that between Appalachia and Farner. The portion between Wetmore and Appalachia was regarded as comparatively safe. The accident occurred about six or seven miles south of Wetmore, about 11 o'clock on the night of February 27, 1902. That day Kinzel was engaged, as usual, in running freight train No. 13 from Knoxville to Blue Ridge. He left Knoxville at 12:30 p. m., and arrived at Wetmore at 5:30 p. m., about two hours late. He was drawing a train of 12 cars, loaded with coal and coke. It had been raining for two or three days, and slides and washouts were anticipated in the mountains. Because of this, trains Nos. 11, 12, and 14, of that date, between Blue Ridge and Knoxville, were annulled. This left but one train going north (No. 2, a passenger train) and one train (No. 13, Kinzel's freight) running south. The passenger train, No. 2, was delayed by small slides in the mountains, and did not reach Wetmore until after 9 o'clock. In the meantime Kinzel, acting under a special order, went back to Grady with his engine, and brought four camp cars, with track tools and men, to Wetmore, for the purpose of taking them along with his train up into the mountains to repair the track next day. Passenger train No. 2, when it arrived at Wetmore, reported that it had struck several small slides, that a large one fell in behind it, and that it did not think No. 13 could get through that night. Before the arrival of No. 2 at Wetmore, Kinzel asked the operator to tell the train dispatcher that he did not want to go through that night, because it was not safe, and that he could not go through anyhow. The reply came back that he would have to proceed with his train, and cautioned him to run slowly and carefully, and look out for slides. About 9:30 he pulled out south, having cut off two of his loaded cars, and attached the four camp cars which were needed for the next day's work in the mountains. The primary object of sending Kinzel's train from Wetmore south that night was to get the extra track gang from Grady to the mountain line, in order to open the road for the next day's business. The secondary purpose was to advance the freight as far as Appalachia. There was no idea of any serious trouble between Wetmore and Appalachia. The trouble was usually between Appalachia and Farner. Kinzel proceeded south, observing the caution to run slowly. The track was being patrolled by an extra gang of track walkers. About six or seven miles south of Wetmore, where the road ran along the foot of the mountain about 20 feet above the river, and when Kinzel was in sight of the light of the section foreman, who had a few minutes before passed along where he was then running, suddenly and without warning a slide occurred under or directly in front of the engine, which carried the track and engine down into the river. The section foreman was within three or four hundred yards of the engine, watching it, when the slide carried it down. Kinzel, though terribly hurt, was still alive when taken out of the wreck. He told the foreman that he saw his light, and thought everything was all right, but the slide came in on him, giving him no chance to avoid it.

There was no testimony tending to show that the defendant was to blame for the slide which caused the accident. There was in Union Pac. Railway Company v. O'Brien, 161 U. S. 451, 16 Sup. Ct: 618, 40 L. Ed. 766. For aught that appeared, the roadbed was properly constructed, and the track that night was exceptionally well patrolled. It was not in Fisher v. Oregon Short Line (Or.) 30 Pac. 425, 16 L. R. A. 519. The section foreman passed along on his round of inspection but a few minutes before the slide took place, and there was nothing to indicate trouble ahead. The track and its surroundings appeared to be all right.

The plaintiff's case therefore rests solely on the claim that the defendant was at fault in sending Kinzel into the mountains that night. It is insisted he was ordered into a place of unusual danger, despite his protest and against his will, and was thus exposed to perils known to the company, but of which he was ignorant, with the result described. In other words, it is insisted he was the victim of a negligent order which subjected him to risks outside his regular employment. If this claim found support in the testimony, there might have been a case for the jury. But there was no order given him, in the sense claimed. Kinzel was not engaged in extraordinary work under a special order. He was on his regular run. It is true, he was being exposed to an additional risk by reason of the weather. A railroad in a mountainous region is liable to slides and washouts in rainy weather. This is a matter of common knowledge. Kinzel knew this when he took the job. And of course he assumed the risk. It was one of the risks of his employment. Union Pac. Railway Co. v. O'Brien, 161 U. S. 431, 456, 16 Sup. Ct. 618, 40 L. Ed. 766; Id., 49 Fed. 538, 1 C. C. A. 354. Rains will come in mountains as well as elsewhere, but trains must be run, and roads kept open for traffic, notwithstanding the increased risk to operatives.

Moreover, the record contains plenty of proof that Kinzel was advised on the day of the accident of the increased risk of the situation. He reached Wetmore two hours late. He was ordered to wait there for the passenger train coming north, which did not arrive until 9 o'clock. In the meantime he was sent to Grady for the extra track gang. This advised him there was trouble in the mountains. Because he anticipated trouble ahead—feared there might be slides on the track—he asked to be allowed to stay at Wetmore overnight. The exigencies of the situation would not permit the granting of the request. It was necessary to get the extra gang through to Appalachia that night, so as to put the track between there and Farner in condition for the next day's business. So he was told to proceed, but to run slowly and carefully and look out for slides. This again was notice and warning that there was danger of slides ahead. It is to be observed, however, that the order was not a special one. It did not require exceptional work—work outside his line of duty. It only required him to do the work he had undertaken to do when he accepted the job. When he pulled out of Wetmore that night, although he did so reluctantly, he nevertheless assumed the risk. He did only what every engineer must do under

like circumstances. 1 Labatt, Master & Servant, § 438, and cases cited; Linch v. Sagamore Mfg. Co., 143 Mass. 206, 210, 9 N. E. 728; Toomey v. Eureka Iron & Steel Wks., 89 Mich. 249, 50 N. W. 850; C. & O. R. Co. v. Hennessey, 96 Fed. 713, 38 C. C. A. 307, and note, p. 314.

Kinzel's reluctance to go on that night was due to the fact that he feared that in the darkness he might run into obstructions. The declaration averred there were obstructions known to the company, of which he was not advised, that caused the accident. If the proof had in any degree supported this averment—if it had tended to show that there were dangerous obstructions on the track which were known to the company, and that in spite of his protest the company had ordered him on without advising him of their presence, and without taking proper steps to protect him against them—another case would be presented. But the accident was not due to an obstruction into which Kinzel ran because of the darkness. Every reasonable precaution was taken by the company to protect him against obstructions. He was warned to run slowly and look out for slides, and the track was carefully patrolled. Everything was done that could be done. The slide which caused the accident was not known to the company when it directed Kinzel to proceed south. It had not then occurred, and could not have been anticipated. The track was clear when Kinzel reached the place of the accident, and the light of the trackman who had preceded him but a few minutes was in sight. The slide came on so suddenly that Kinzel could not avoid it. He did not run into the slide because of the darkness, but the slide virtually ran into him. In an instant the track was swept from under him. The result would have been the same if, under similar circumstances, the slide had occurred during the daytime. We agree with the court below that it was a case of pure accident, for which the company cannot be held liable.

The judgment is affirmed.