PUGET SOUND ELECTRIC RY. v. HARRIGAN.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1910.)

No. 1,765.

1. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERVANT
—ASSUMPTION OF RISK.

An employé does not assume the risks arising from his employer's neg-
ligence, which are not incidental to the business, when he has no actual
knowledge of the same.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–
600; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake &
O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERV-
ANT—ASSUMPTION OF RISK.

An employé, by undertaking a service in which he was obliged at night
to depend upon the light of a lantern carried by him, did not thereby as-
sume the risk from conditions due to the negligence of the employer be-
cause it would have been possible for him by the aid of his lantern to have
ascertained and guarded against the danger, but he assumed only such
risks as he could have avoided by the exercise of reasonable care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–
600; Dec. Dig. § 217.*]

3. MASTER AND SERVANT (§§ 286, 288, 289*)—ACTION FOR INJURY TO SERVANT—
QUESTIONS FOR JURY.

Defendant operated an electric railroad, and at one terminal made up a
train at night at a switch on a trestle. There was a light at the switch
stand only and a platform extending for some distance. Plaintiff, as con-
ductor, was sent one night to make up the night train, and having run
the motor car on the switch to a point where it would clear cars on the
main track, which was in fact beyond the platform and at a place not
lighted by the switch light, he swung off with his lantern. He had not
been at the place for some time, but knew that in the meantime the plat-
form had been extended, although not how far, and seeing a plank below
him, and supposing it to be the platform, dropped to it; but it proved to be
only a single plank lying on the timbers below the level of the track, and
he fell from the trestle and was injured. Held that, under the facts of
the case, the question of defendant's negligence in failing to provide a
platform at the place or better lights, and also the question of plaintiff's
contributory negligence and assumption of risk, were properly submitted
to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–
1050, 1068–1132; Dec. Dig. §§ 286, 288, 289.*]

In Error to the Circuit Court of the United States for the Western
Division of the Western District of Washington.

Action by Frank Harrigan against the Puget Sound Electric Rail-
way. Judgment for plaintiff, and defendant brings error. Affirmed.

The parties to this action will be designated as "plaintiff" and "defendant,"
as they were in the court below. The defendant owned and operated an elec-
tric railway between Tacoma and Seattle. Near Tacoma, the railway is con-
structed on a trestle at an elevation of about 35 feet, with a branch from the
main line running to the tide flats in the form of a wye, one arm of the wye
in a curve leading toward Tacoma, and the other arm, also in a curve lead-
ing toward Seattle. At the junction of the wye leading towards Seattle with
the main track, there is a platform extending alongside the main track and

a small portion of the wye, which is about 225 feet in length, varying in width from 3 to 7 feet. The platform is guarded on the outside by a fence about 3 feet in height. There is no fence or guard rail at the south end of it, and the platform is about level with the rails of the track. It has been used by the defendant in the work of switching cars on the trestle. About 100 feet north from the south end of the platform is a switch stand, used to operate the switch at the junction of the wye with the main track. South of the platform, and beginning about 500 feet from the end thereof, there was at the time of the accident a 2-inch plank from 25 to 30 feet long, and 10 inches wide, lying on top of the bents of the trestle close to the branch line, and about 20 inches lower than the platform. The plank was without guard rail or protection. Being underneath the level of the track, it was not visible from the main track.

There is no evidence as to the purpose for which the plank had been placed there. According to the testimony, it had been there for some time prior to the accident. It had not been used by the defendant's employés while engaged in the work of switching on the trestle. The track of the wye was not planked between the ties or at the sides. There was a cluster of five incandescent lights at the north end of the platform and on the opposite side of the main track from the switch. Over the lights was an inverted reflector which cast the light downward. The light lit up the north end of the platform and the location of the switch stand; but it did not extend to the south end of the platform, nor to the plank above referred to. For more than two years prior to August 23, 1907, it had been the practice of the defendant to switch cars and make up the night freight train from Tacoma to Seattle on the trestle at the switch above mentioned; but on that date the defendant ordered its employés to weigh the meat cars, which made a part of the night train, on the scales in its freight yards in Tacoma. That order was carried out until November 23, 1907, the date of the accident. On the evening prior to that date, the tracks to the scales in the freight yards being obstructed, the defendant instructed the plaintiff not to weigh the cars on the night of November 23d. The only place furnished by the defendant to switch the cars and make up the night train was on the wye of the trestle.

The plaintiff entered the employment of the defendant in August, 1905, as a trolley tender. He subsequently acted as rear brakeman on the night freight until March, 1906. At that time the platform at the switching place on the trestle was quite short. Subsequently it was lengthened. It was usually dark when the plaintiff passed the switch. His duties did not take him on the wye, or require him to be upon the platform, but during the summer of 1907 he hauled some steel rails on the main line, which took him past the switch in the daytime. On October 21, 1907, he took charge of the freight train known as the "meat run," as conductor, and he remained in charge thereof until the time of the accident. During this time he switched the meat cars in the freight yards at Tacoma. He testified that he knew that the platform had been lengthened, but that he did not know how far it had been extended. The body of the motor car was 45 feet long. It had six doors, one in each end, two large doors on each side in the center, and one narrow door at each side near the end. The end doors were used by the men in stepping from the motor out upon the pilot to make couplings. When a car stood on the wye near the switch in such a position as to be clear of the main line, the southern end of it extended about 15 feet beyond the south end of the platform.

On the night of the accident, it was cold, dark, and rainy. The crew of the night train were required to make good time, and it was customary for the conductor to assist them in the switching. The plaintiff and his crew, consisting of Murphy, motorman, and Smith and Hubbard, brakemen, took the motor from the Tacoma freight yards, went to the packing house on the wye, coupled onto the meat cars, and hauled them on the wye of the trestle leading towards Seattle, and left them at the customary place just far enough back from the switch to clear the main line. The plaintiff with his crew on the motor, then went back to the freight yards, coupled onto a merchandise car there, went back to the wye, left the merchandise car on the main line, proceeded with the motor past the switch, then backed up to couple onto the

meat cars. Murphy operated the motor, and the plaintiff stood in the rear of the motor, tending the trolley. He knew that there was a freight train about three miles up the track waiting for his train to pass. While the coupling was being made, the plaintiff, intending to turn the switch, stepped out of the side door of the rear end of the motor, stepping out backwards, and grasping the handles on each side of the door with his hands. His lantern hung on his arm. There was no light except such as was furnished by his lantern. It did not distinctly light up the place beneath him: He testified that he believed that the platform extended past that point, and seeing a plank beneath him, and taking it to be the platform, he let loose of the motor, and swung around, stepped on the plank, and, losing his balance, fell to the ground beneath, receiving serious injuries. In bringing his action to recover damages, he alleged, in substance, that the defendant was negligent: First, in failing to provide a platform sufficient in length and properly guarded at the switching places; second, in permitting the plank to lay on the caps of the trestle in an unguarded condition; third, in failing properly to light said switching place and the plank. The defendant denied negligence, and pleaded assumption of risk and contributory negligence on the part of the plaintiff. The jury returned a verdict for the plaintiff for $5,500, for which a judgment was rendered.

Benjamin S. Grosscup and W. C. Morrow, for plaintiff in error.

J. F. O'Brien, O. P. Burkey, and J. E. Burkey, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The defendant assigns as error the refusal of the court to grant its motion for a directed verdict for want of testimony to justify a verdict in favor of the plaintiff, and contends there was failure of proof of negligence on its part in any respect. It argues that the platform was of ample size for switching purposes, that lights were provided sufficient to light the switch stand, and that it was the duty of the conductor to move up his train after coupling onto the meat cars and before stepping from the motor to turn the switch. On considering the whole testimony, we are of the opinion that the court below did not err in submitting the question of the defendant's negligence to the jury. The platform had recently been extended southward, but it had not been carried so far as to extend alongside the rear end of a motor standing on the wye when in a position to be clear of the main track. If it had been extended 15 feet farther than it was, it would have been made perfectly safe. Again, it would seem that the south end of the platform should have been lighted, and that the unguarded plank, which was calculated to deceive an employé, should not have been left upon the bents by the side of the track. There was no evidence that it was there for any useful purpose. Its presence there was not explained. It is quite conceivable that an employé who had not been switching at the wye since the extension of the platform, and who had no knowledge of the presence of the plank, and who had no light for his guidance except the dim light furnished by a signal lantern, might have been misled into taking it for the platform. In Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612, the court said that a railroad company was under obligation "to provide and maintain in suitable condition the

machinery and apparatus to be used by its employés—an obligation the more important, and the degree of diligence in its performance the greater, in proportion to the dangers which may be encountered." See, also, Northern Pacific Ry. Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755, and Washington & Georgetown R. R. Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235.

Nor do we think the case should have been taken from the jury on the ground that the plaintiff assumed the risk of the injury which he received, or that there was error in giving or refusing instructions to the jury on that subject.   Of course, it is a matter of common knowledge that there is always more or less personal risk in the occupation of a railroad employé.   In accepting his employment, the plaintiff assumed all the ordinary and usual risks incident thereto, not only those which he knew, but those which he might, in the exercise of reasonable care, have discerned.   But he assumed such risks with the recognized qualifications, one of which is that the employer shall use usual care to obviate or at least minimize the danger, and he did not assume the risk of latent defects, notwithstanding that his opportunity of discovering them was the same as that of his employer.   He did not assume the risks arising from his employer's negligence, which were not incidental to the business, when he had no actual knowledge of the same.   Union Pacific Ry. Co. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188.

Taking all the evidence into consideration, we are not convinced that the facts were such as to call for any instruction other than that which was given upon the subject of assumption of risk.   The argument advanced in this connection might more properly be addressed to the defense of contributory negligence, negligence on the part of the plaintiff in not causing the motor to be moved up to the switch stand, where there was ample light, before getting off the car to turn the switch, and in not exercising more care to know that the platform was beneath him before he stepped off upon the unguarded plank.   The court gave the following instruction:

"Assumption of risk means that one who enters a dangerous employment assumes the hazards which attend that employment, which ordinary foresight and reasonable prudence cannot anticipate, and yet are likely to occur."

But the defendant asked the court to charge the jury that the plaintiff assumed the risk of working with the aid of the artificial light furnished by his lantern, and that it was his duty to exercise care commensurate with the circumstances; that it "was his duty to use his lantern in such a way as was necessary to protect him under the circumstances."   The instruction so requested goes further than the just rule in regard to assumption of risk.   To have thus instructed the jury would have been to say, in effect, that the plaintiff was bound to exercise such care as to make an accident impossible.   Such is not the law. He was bound only to exercise reasonable care.

While the question whether there should have been an instructed verdict on the ground of the plaintiff's contributory negligence is not free from doubt, we are not convinced, in view of the evidence, that

there was error in submitting the question to the jury. The plaintiff was unfamiliar with the place at which the switching was to be done. He knew that the platform had been extended, but he did not know to what point it had been extended. The defendant did not furnish a fixed light sufficient to light up the south end of the platform. It furnished the plaintiff a lantern which, as the evidence tends to show, was not adequate to light up the premises. It had placed alongside its track a plank which was there for no explained purpose, and which was likely to deceive. In view of all the circumstances, we are not prepared to say, as a matter of law, that the plaintiff, in descending from the car as he did, with the light which he had, and in stepping upon the apparent platform beneath him, was guilty of contributory negligence such as to preclude him from recovering damages.

The judgment is affirmed.