SHERIDAN COAL COMPANY, APPELLANT, v. C. W. HULL COMPANY, APPELLEE.

FILED JUNE 10, 1910. No. 16,042.

1. Pleading: SUFFICIENCY AFTER JUDGMENT. Where the sufficiency of an answer to support a counterclaim is not questioned until after judgment, all reasonable intendments should be indulged in support of the pleading.

2. Sales: OFFER: ACCEPTANCE. An affirmative answer to a proposition to purchase coal, followed by a delivery of a major part of the fuel referred to, may be taken as satisfactory evidence of an acceptance of the proposition, although the answer indicates there may be a brief delay in the first delivery of the coal.

3. Trial: INSTRUCTIONS: REVIEW. Upon appeal, the district court's instructions will be considered together, and the losing party will not be heard to complain that an instruction is not precisely and clearly stated if he did not request a proper instruction upon the subject.

4. Appeal: VERDICT: CONCLUSIVENESS. Questions of fact upon conflicting evidence are to be decided by the jury in actions at law,

and their finding will not be set aside on the ground of the want of evidence to support it unless it appears that the verdict is manifestly wrong.

5. Witnesses: EXAMINATION. Where a witness is called to contradict the testimony of a former witness who has stated that certain things were said, it is within the discretion of the trial court to permit counsel to ask leading questions.

6. An unauthorized declaration of an agent, made after the transaction to which it relates is completed, is not competent evidence against the principal.

7. Appeal: AUTHORITY OF AGENT: ADMISSIBILITY OF EVIDENCE. An agent of a corporation having charge and control of an inferior servant of that master may properly testify to the scope of such servant's duties, and if he is permitted to deny that servant's authority to make admissions adverse to their common employer's interests, the error, if any, will be held without prejudice where it clearly appears, independently of that denial, that no such authority was vested in the servant.

8. Evidence: BOOKS OF ACCOUNT. Where the evidence discloses that a corporation extensively engaged in trade, in the regular course of its business in purchasing merchandise, causes every order to be entered in a book and numbered before it is transmitted to the person with whom the corporation is dealing, and during litigation it becomes important to prove whether an order was written and transmitted, the court in its discretion may, in connection with other evidence tending to prove that such an order was written and transmitted to the sendee and a proper foundation has been laid by verifying the book and entry therein, permit the corporation to introduce such an entry in evidence.

9. ———: SECONDARY EVIDENCE. Where a proper foundation has been laid, secondary evidence may be received of the contents of a document which cannot be produced.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*B. N. Robertson,* for appellant.

*F. A. Brogan, contra.*

ROOT, J.

Each party to this suit is a corporation; the plaintiff is engaged in mining and shipping coal, and maintains

offices in the city of Omaha; the defendant is a wholesale and retail dealer in coal in said city. The plaintiff demands a balance due upon shipments of coal to defendant, and the latter asserts a counterclaim because, as alleged, the plaintiff failed to deliver to the defendant 1,500 tons of slack coal in 1907. The issue between the parties is whether a contract between them made about July 19, 1907, was oral and for 2,500 tons of coal, or in writing for 4,000 tons thereof. The defendant asserts that the contract is embodied in two letters, one written by the defendant to the plaintiff, and the other by the plaintiff to the defendant, as follows: "C. W. Hull Co., Omaha, Neb., July 19, 1907. Order No. 909. Above number must be shown on invoice. To Sheridan Coal Co., Omaha, Neb. Gentlemen: Please enter the following order and ship as stated below to C. W. Hull Co. at Omaha, Neb., via C. B. & Q., one hundred (100) cars each to contain 40 tons Cherokee slack coal at $0.60 per ton f. o. b. mine. To be shipped to arrive in Omaha at the rate of two (2) cars or 80 tons per day beginning July 26. Please acknowledge receipt of this order and if you are unable to fill as specified, notify us *immediately*. Invoice and correspondence relating to this order *must* invariably bear our order number. Regardless of distinction of shipment, the invoice, bill of lading, notice and all other correspondence pertaining to this shipment *must* be addressed to us at Omaha, Neb. C. W. Hull Co., By M. E. Serat." "Sheridan Coal Co., Omaha, Neb., July 20, 1907. C. W. Hull Co., Omaha, Neb. Dear Sirs: Your order No. 909. Shipments will begin on this order today at the rate of 80 tons per day. Yours resp., J. H. Rogers, G. S. A."

The defendant further alleges that Rogers is the plaintiff's general sales agent, had authority to execute the contract, and that plaintiff delivered 2,507.75 tons of said coal, but refused to deliver the remaining 1,492.25 tons thereof. The defendant's manager testifies that on July 19, 1907, he caused the letter first copied in this opinion to be written, and signed it or caused his clerk to attach the

witness' signature thereto. There is considerable evidence tending to prove the manner in which the defendant transacts its business, and to the effect that the letter was duly posted after having been addressed to the plaintiff. It is conceded that the second letter was written by the plaintiff and received by the defendant. The litigants disagree as to whether this letter referred to an alleged order given over the telephone or to the letter of July 19. There is a mass of evidence in the record difficult to reconcile if all of the witnesses are gifted with accurate memories and have testified without equivocation or mental reservation.

1. It is insisted that the defendant did not plead sufficient facts in its answer to state a cause of action against the plaintiff, and therefore the court erred in submitting the issue of defendant's damages to the jury. No such question seems to have been raised in the district court. We shall, therefore, construe the pleading liberally in favor of the defendant. *Merrill v. Equitable Farm & Stock Improvement Co.*, 49 Neb. 198; *Latenser v. Misner*, 56 Neb. 340.

The plaintiff argues that the letter of July 19, if written and sent, contained two conditions: (1) The coal is "to be shipped to arrive in Omaha at the rate of two (2) cars or 80 tons per day, beginning July 26"; (2) the receipt of the order must be acknowledged. The plaintiff further urges that the defendant did not acknowledge receipt of the letter of July 19, but stated that shipments would begin July 20 at the rate of 80 tons per day. It also argues that the letter of July 20 in effect rejected the conditions imposed in the offer, and converted the transaction into a conditional sale. The following is from plaintiff's brief: "If conditional, the plaintiff would not be liable for failure to fulfil the contract unless the 1,492.25 tons of coal actually arrived in Omaha. * * * Whether it did so arrive or not the record is silent." We are not inclined to adopt the plaintiff's theory of the legal effect of the letters. It is true, as argued by counsel, that

in the making of a contract of sale the minds of the parties must assent to the same thing and in the same sense, and that a counter proposition amounts to a rejection of a proposition theretofore made concerning the same subject matter. But what will constitute an acceptance depends frequently upon circumstances. A direct, unequivocal, written acceptance of an offer to purchase is satisfactory evidence of the fact, but, if the parties have not stipulated otherwise, the acceptance need not be in any particular form nor evidenced by express words; the delivery by the vendor of a part of the property referred to in the offer to buy may take the place of words as proof of an acceptance. In the instant case we shall not assume that coal shipped from the plaintiff's mines via the Chicago, Burlington & Quincy Railway Company, July 20 would not reach Omaha on July 26 of that year; but, if there was a delay of a day or two in delivering the initial two cars of coal, the failure to perform that condition contained in the defendant's proposition was waived when it accepted the coal. If the letter of July 20 contained a counter proposition, the plaintiff was asking for more time within which to commence delivering the coal, and if the parties by their conduct, as the jury must have found, accepted the letters as the basis for a sale, it does not lie in the plaintiff's mouth to say no contract ever existed. Upon the pleadings and the proof the court was right in instructing the jury there were but two questions for their determination: (1) Was a written contract made for 4,000 tons of coal, as claimed by the defendant; (2) the amount of the defendant's damage if the contract was made.

2. The plaintiff asserts the court erred in instruction numbered 5 in assuming that the letter of July 19 was in evidence, and in stating that the letter of July 20 is an acceptance of the former communication. We think the instructions taken together properly advised the jury. Two special findings were submitted for their consideration, and they answered that the plaintiff did receive from

the defendant the letter of July 19, and that the letter of July 20 was written in acknowledgment thereof. Instruction 5 is not so clear as might be desired, but we do not believe, when considered with the other instructions and the special findings, it could or did mislead the jury. The plaintiff made no request for instructions, and ought not to complain that any instruction given by the court is indefinite. *Chicago, B. & Q. R. Co. v. Oyster,* 58 Neb. 1; *Stein v. Vannice,* 44 Neb. 132. The argument that the entire charge is unfair to the plaintiff has no support in the record.

3. It is argued with great plausibility that the verdict and the answers to the special interrogatories are not sustained by sufficient evidence. There are many facts and circumstances shown by the evidence tending strongly to corroborate the principal actors in the transaction, so the weight of the evidence must be determined by the credibility of the respective witnesses. This subject was for the jury, and is not for this court to deal with. If the jury believed Serat, their verdict is sustained by sufficient evidence. The assignment is not well taken. *O'Leary v. Iskey,* 12 Neb. 136; *Reid v. Colby,* 26 Neb. 469, 512; *Fremont, E. & M. V. R. Co. v. French,* 48 Neb. 638; *Fisher v. Chambers,* 84 Neb. 92.

4. Mr. Rogers, the plaintiff's sales agent, testified to a conversation over the telephone with Mr. Serat, the defendant's manager, July 19, and stated, in substance, that Serat at that time ordered 2,500 tons of coal, and no more. In rebuttal the defendant's counsel propounded the following question, which the witness was permitted to answer over the plaintiff's objections: "Mr. Serat, did you on the 19th day of July, 1907, call up Mr. Rogers and give him a verbal order for 2,500 tons of Cherokee slack coal?" It is argued that the question is not only leading, but calls for the witness' conclusion; that he should have stated what, if anything, he did and said, and should not have been permitted by a negative answer to give character to the transaction. Serat on cross-examination ad-

mitted he had talked over the telephone with Rogers, but said he could not remember the date, and the plaintiff did not press its cross-examination upon this subject. Generally leading questions should not be propounded on direct examination, nor should a nonexpert witness be asked to state his conclusion concerning the substance of the issue; but where a witness is called to contradict the testimony of a former witness who has stated that certain expressions were used during a conversation, it is not an unusual practice to ask the witness called in rebuttal whether those statements were made. Starkie, Evidence (10th ed.) *169; *Union P. R. Co. v. O'Brien,* 161 U. S. 451; *Norton v. Parsons,* 67 Vt. 526. We have not lost sight of the fact that by a negative answer to this question the witness was not only contradicting the witness Rogers, but testifying against the plaintiff's contention that the contract between the parties was oral and not written; but we think the subject was one within the discretion of the trial judge, and, while we would be as well satisfied had he sustained the objection, we do not consider he committed reversible error in overruling it.

5. Mr. Megeath, the plaintiff's president, testified, in substance, that about August 31, during a conversation over the telephone with a Mr. Prohaska, one of the defendant's employees, Prohaska inquired whether the plaintiff intended to ship any more coal, and the witness answered in the negative and said the contract had been filled, to which Prohaska responded: "We will consider the order filled." The proof shows that Prohaska was a rate and reconsignment clerk in the defendant's employ, and had nothing to do with the purchase of coal. Subsequently, Serat was recalled, and over the plaintiff's objections was permitted to state that Prohaska had no authority to make admissions to parties from whom Hull & Company purchased coal, and it was no part of his duty to check up the filling of orders. Prohaska's conduct in no manner induced the plaintiff to perform any act or relinquish any right; his statement was of doubtful

materiality, but, in any event, he did not have authority to make an admission involving a construction of the contract. *Gale Sulky Harrow Co. v. Laughlin,* 31 Neb. 103; 16 Cyc. 1008. Serat was Prohaska's superior and could properly testify to the scope of the latter's employment and duties. Undoubtedly the court would have committed no error had it sustained the objection to the question calling for Serat's conclusion as to whether Prohaska had authority to make admissions against the defendant's interest; but it clearly appears from the facts that he had no such authority, and the error, if any, is without prejudice.

6. The defendant was permitted over the plaintiff's objections to introduce in evidence the entry upon one line of its order book. The evidence discloses that, whenever the defendant prepares an order for the purchase of coal or material, an entry is made in this book, and that orders are consecutively numbered therein at the time the entries are made. It will be observed that both the letter of July 19, which the defendant insists was transmitted to the plaintiff, and the letter of July 20, written by the plaintiff, contains the number "909." The entry admitted in evidence is thus numbered, and the proof shows it was made in the due course of business in the defendant's office. This entry in no manner contradicts the contents of either letter, but it was part of the *res gestæ* of the transaction, and has some probative force in connection with the testimony of the witnesses and the fact that the number appears on the plaintiff's letter and on the one testified to by the defendant. *Labaree v. Klosterman,* 33 Neb. 150; *Fleming v. Yost,* 137 Ind. 95; *Place v. Baugher,* 159 Ind. 232; 1 Greenleaf, Evidence (16th ed.) sec. 120.

7. Counsel argue that the court erred in permitting the witness Kennedy to testify that exhibit 1 is a correct copy of the defendant's order 909. A sufficient foundation was laid to show the execution of the order of which exhibit 1 is said to be a copy. There is evidence tending to prove

the order was sent to and received by the plaintiff; notice was served upon the plaintiff to produce the original order in court, and it did not do so. The plaintiff's witnesses testified that no such order was received at the office. The copy was competent evidence and properly received in evidence.

A careful consideration of the record and of the briefs of counsel convinces us that the plaintiff has no just cause to complain of the district court, and the judgment of that court is

AFFIRMED.